L. M. JONES *vs.* CO-OPERATIVE ASSOCIATION OF AMERICA.

Androscoggin.    Opinion October 8, 1913.

*Damages.   Exceptions.   Negligence.   Injuries.   Instructions.   Interest.*
*Verdict.*

1.  In an action to recover damages for personal injuries received by the plaintiff and instruction to the jury to reckon interest at six per cent from the date of the writ on the amount, they should find the plaintiff was entitled to recover for her injuries and include that interest in the amount of the verdict, is erroneous.

2.  The compensation of the plaintiff was not limited to the damages resulting to her, up to the date of the writ, but included such damages as had resulted to her from her injuries up to the trial, and also such future damages as the evidence made reasonably certain will result to her from those injuries.

On motion and exceptions by the defendant.  Motion overruled. Exceptions overruled if within thirty days after the rescript of this decision is filed, the plaintiff remits all of the verdict, in excess of $3,487.15; otherwise, exceptions sustained.

This is an action on the case to recover damages for personal injuries, received by the plaintiff, by being thrown from an elevator, operated by the defendant, and is based on the negligence of the defendant. The defendant pleaded the general issue. In the first trial of this case, a nonsuit was ordered, with the stipulation that if that ruling should not be sustained, the question of damages only, should be submitted to the jury. At the second trial of the case, the jury returned a verdict for the plaintiff for $4,136.75. The Justice presiding, in the course of his charge to the jury, instructed the jury to reckon interest at six per cent from the date of the writ on the amount they should find the plaintiff was entitled to recover for her injuries, and include that interest in the amount of the verdict. To this instruction the defendant excepted, and also filed a motion for a new trial, on the ground that the damages awarded are excessive.

The case is stated in the opinion.

*McGillicuddy & Morey,* for plaintiff.

*Oakes, Pulsifer & Ludden,* for defendant.

SITTING:  SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, PHILBROOK, JJ.

KING, J.  This action was commenced March 14, 1910, to recover damages for personal injuries received by the plaintiff by being thrown from an elevator operated by the defendant.

At a former trial a nonsuit was ordered with the stipulation that if that ruling should not be sustained the question of damages only should be submitted to the jury.  The case has been again tried resulting in a verdict of $4,136.75 for the plaintiff, and it is now before this court on the defendant's exceptions, and motion for a new trial on the ground that the damages awarded are excessive.

THE EXCEPTIONS.

The jury were instructed to reckon interest at 6% from the date of the writ on the amount they should find the plaintiff was entitled to recover for her injuries and include that interest in the amount of the verdict.

That instruction was erroneous.  Such is not the rule in actions to recover damages for personal injuries.  The plaintiff's compensation was not limited to the damages resulting to her from the injuries complained of up to the date of her writ, but included all the damages that had resulted to her from those injuries up to the trial, and also such future damages as the evidence made reasonably certain will result to her from those injuries.  The effect of the instruction was to give the plaintiff interest from the date of the writ on compensation for damages that had not then resulted to her.

But the defendant was injured by the erroneous instruction to the extent only of the amount of interest improperly included in the verdict.  That can be determined by computation with reasonable accuracy.  The learned counsel for the defendant states the amount of the verdict, less the interest, as $3,487.15.  Our computation gives practically the same result, and shows that sum to be at least safe and conservative.  Accordingly it is the opinion of the court that if the plaintiff remits so much of the verdict returned as is in excess

of $3,487.15, justice will not require that a new trial should be granted because of the instructions complained of. See *Moulton* v. *Scruton,* 39 Maine, 287, 291.

THE MOTION.   The amount of damages was the only issue.

The plaintiff was injured September 10, 1909. She was then 67 years old and weighed 207 pounds. She and her daughter, having lunched in the defendant's store at Lewiston, Maine, came down the elevator to the first floor. The daughter stepped out, and just as the plaintiff was in the act of stepping out, and before her feet reached the floor, the elevator was negligently permitted to start up with a jerk whereby she was thrown head long and helplessly to the floor striking on her right side, shoulder and head. The head of her right arm, the humerus near the shoulder, was fractured, and her leg, knee and ankle were bruised. She was immediately taken to the house of Dr. Garcelon, who reduced the fracture and properly attended to her other injuries. On account of anticipated swelling her arm was at first swathed in soft bandages, and after a few days a permanent dressing of silicate of soda, which when dry becomes hard and brittle, and is called a "glass bandage," was put on. By this her whole right side from the neck down was bandaged, the arm being bound to the side, the bandage extending to the wrist. On Tuesday, following the accident on Friday, she was taken to her home in Cambridge, Massachusetts.

Shortly thereafter, on September 21st, Dr. Coggswell was called. He found the plaintiff in bed, "a good part of the time crying, and evidently very nervous." He visited her ten times in the course of thirteen weeks, his last visit being December 14th. The glass bandage was removed about the middle of October—five weeks and a half from the time of the injury. Dr. Coggswell, the fairness of whose testimony the defendant's attorney commends, testified, that during the four weeks after he first saw her, and while she had the bandage on, there was a complaint at every visit of pain, especially bothering her at night, so that she was unable to sleep well; that at the time the bandage was removed, there were the remains of a large abrasion of the tissues on the front of the shoulder, a bruise extending down, especially on the inside of the upper arm, and some on the outside, and on the side of the chest; that on taking the bandage off the shoulder was rigid, and that Mrs. Jones herself could not move it

in any way, and any effort of others to move it caused her much pain; that the arm was then put in a sling and carried there night and day; that an effort was made by him and her daughters to move the arm so as to limber the tissues around the broken joint. On the 18th of November he saw her in company with Dr. Chase, a physician sent by the defendant to examine her. At that time her arm was still in the sling and she was able to move it up not quite to a horizontal position and was unable to move it back of her side. On December 14th, the time of his last visit, she could move her arm a little more, and she still complained of the pain in her shoulder and extending down into the arm. He was also present at an examination of the plaintiff by several physicians at the time of a former trial of this case, in January, 1913, and as to her condition then as compared with what it was over three years before, he said: "I should say she had more free use of it now, a little more, but not much." And, finally, after describing her nervous condition as it was during the first four weeks, and after the bandage was removed, he said: "and subsequently she showed there was something wrong medically with the nerves here around the seat of the injury."

It was claimed that the plaintiff has neuritis caused by her injuries, and some of the physicians called in her behalf expressed their opinion to that effect, while others thought her symptoms, subjective and objective, may indicate a neuritic condition of the nerves, or that such a condition is developing. On the other hand Dr. Chase, called by the defense, who examined her in November, 1909, and was present at her examination in January, 1913, testified that he discovered nothing in her condition to lead him to believe that she was suffering from neuritis. That disease is admittedly serious and probably incurable.

All the physicians agree that the plaintiff is now suffering from a condition known as a hardening of the spinal cord. Such a condition may be the result of some previous disease, or of exposure to cold and hard work, or of an injury. It develops more commonly after middle life. In the absence, in this case, of any evidence of a previous disease, or of such exposure and hard work as might have caused it, her physicians were inclined to the opinion that it may be the result of her injuries. But Dr. Chase testified that when he examined the plaintiff in November, 1909, about a month after her

injuries, he found clear evidences that she was then suffering from hardening of the spinal cord, and that it must have had its origin long before the time of her injuries, because it develops slowly. And we think the weight of the medical testimony is, that, assuming the plaintiff showed clear symptoms of hardening of the cord in November, 1909, the disease probably had its origin prior to the accident, notwithstanding the plaintiff herself did not realize it, but felt that she was perfectly healthy.

We do not think, however, that the determination of the question whether the amount of the damages awarded the plaintiff was excessive necessarily depends on whether the evidence would justify the conclusion that the hardening of the spinal cord from which she is suffering had its inception as the result of her injuries on September 10, 1909. If that disease, though undiscovered, was existing or developing before the accident, it may have been, and probably was, accelerated in its development and progress on account of the accident and the injuries resulting to the plaintiff from it.

There was evidence sufficient to justify the jury in finding, that prior to the accident the plaintiff thought she was, and that she appeared to her family and friends' to be, a well and strong person; that since the accident, which happened more than three years before the trial, she has been practically an invalid, has suffered much pain in her right shoulder and arm, and has had practically no use of that arm.

As to her helplessness since the accident her daughter testified: "We have to help her dress; we have to help her comb her hair; we have to help her wash herself; we have to help her at the table, because if we pass her anything she is apt to drop it out of her hands. We have to help her in a thousand ways where before she helped herself that now she is not able to do." And we think the conclusion is reasonably justified by the evidence, that the condition of the plaintiff's shoulder and arm will continue to cause her pain and inconvenience, and perhaps never be much improved.

The plaintiff is also unsteady in her walking, and liable to fall, requiring assistance when she goes upon the street; and she is unable to go up stairs naturally, but puts one foot on a stair and draws the other up beside it, and so on up. No doubt these last named infirmities, and many others with which she is afflicted, are the result of the

hardening of the spinal cord. But that disease, though it may not have been the result of the accident, may have been accelerated and increased by it.

The plaintiff has been greatly disabled, and has suffered much pain and distress in body and mind since the accident. She is now in a serious and quite helpless and hopeless condition. Who can determine precisely to what extent that condition is not the result of the accident to her on September 10, 1909? As to that the physicians disagreed.

It was for the jury to determine the amount of compensation the plaintiff was entitled to as the damages resulting to her from her injuries. The verdict, less the interest, or $3,487.15, represents their judgment as to the amount.

We have examined and considered the evidence with care and are not convinced that the amount awarded is so manifestly excessive that it ought not to be permitted to stand. Accordingly it is the opinion of the court that the motion should be overruled.

The entry will therefore be,

*Motion overruled.*

*Exceptions overruled if within thirty days after the rescript of this decision is filed the plaintiff remits all of the verdict in excess of $3,487.15; otherwise, exceptions sustained.*